# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

_____

Nathaniel J. Richardson, Jr.,
      Petitioner,


      vs.                            Case No. 1:05cv257
                                      (Dlott, J.; Black, M.J.)


Ernie Moore,
      Respondent.

_____

## REPORT AND RECOMMENDATION

_____


      Petitioner, an inmate in state custody at the Lebanon Correctional Institution in Lebanon, Ohio has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the petition; respondent's "Answer/Return Of Writ" with exhibits; petitioner's "traverse" brief in response to the return of writ; respondent's "Supplemental Answer" filed April 21, 2006 in accordance with a Court Order issued February 16, 2006; petitioner's "reply" to the supplemental return of writ; and as further ordered by the Court on February 16, 2006, respondent's submissions of the trial transcript and a copy of the video tape, designated as Exhibit 47 to the return of writ, that was introduced into evidence at petitioner's trial.  (Docs. 1, 25, 27, 31, 41, 49; *see also* Doc. 28).

### Factual And Procedural Background

      On November 21, 2001, the Hamilton County, Ohio, grand jury issued an indictment charging petitioner with murder in violation of Ohio Rev. Code § 2903.02(A) and attached firearm specifications.  (Doc. 25, Ex. 1).  The incident

giving rise to the criminal charges involved the following facts, as found by the Ohio Court of Appeals, First Appellate District, on appeal from the denial of petitioner's petition for state post-conviction relief:[1]

> The evidence presented at the criminal trial showed that Richardson was in a small grocery store when the victim approached Richardson and asked him for a quarter. When Richardson refused, the victim began to curse at him. Richardson left the store, but quickly reentered. The victim's back was turned to Richardson. Richardson walked past the victim, turned, and approached the victim from behind. Richardson then drew a gun and shot the victim in the back of the head, killing him. The shooting and the events surrounding it were recorded by the store's security camera on audio/video tape.

(*Id.,* Ex. 33, pp. 1-2).

Petitioner entered a plea of not guilty by reason of insanity, requesting an evaluation be conducted to determine his "mental state . . . at the time of the offense herein." (*Id.,* Ex. 3).[2] He also waived his right to a jury trial. (*Id.,* Ex. 6).

After a bench trial before Hamilton County Common Pleas Court Judge Thomas H. Crush, petitioner was found guilty as charged. (*Id.,* Ex. 7). On May 3, 2002, petitioner was sentenced to a fifteen (15) year to life term of imprisonment for the murder offense, as well as a three (3) year prison term on a firearm specification "to be served consecutively and prior to the sentence in the underlying offense." (*Id.,* Ex. 9).

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner has neither cited nor presented any evidence to rebut the Ohio Court of Appeals' factual findings quoted herein. Therefore, he has not shown that such findings are erroneous.

[2] Petitioner's counsel also filed a suggestion of incompetency. (Doc. 25, Ex. 4). Petitioner was referred to the court clinic for mental examination to determine his competency to stand trial. On January 25, 2002, the Hamilton County Common Pleas Court issued an Entry finding petitioner competent for purposes of standing trial. (*Id.,* Ex. 5).

With the assistance of counsel, petitioner filed a timely appeal to the Ohio Court of Appeals, First Appellate District, raising the following assignments of error:

> 1. The trial court erred to the prejudice of defendant-appellant by finding him guilty of murder when the evidence presented at trial demonstrated the defendant-appellant was not guilty by reason of insanity.

> 2. The trial court erred to the prejudice of defendant-appellant by finding him guilty of murder and sentencing him to a term of a lifetime in prison when such finding and sentence constitutes a violation of the Eighth Amendment's prohibition against cruel and unusual punishment and a violation of the Due Process Clause of the Fourteenth Amendment.

> 3. The trial court erred to the prejudice of defendant-appellant as it denied defendant-appellant his right to be tried by an impartial and neutral judge as mandated by the Constitutions of the United States and the State of Ohio.

(*Id.,* Exs. 10, 11). On May 28, 2003, the Ohio Court of Appeals overruled the assignments of error and affirmed the trial court's judgment of conviction and sentence. (*Id.,* Ex. 13).

Petitioner's counsel timely appealed this decision to the Supreme Court of Ohio, asserting as propositions of law essentially the same claims of error that had been raised on direct appeal. (*See id.,* Exs. 14, 15). On October 8, 2003, the Supreme Court of Ohio denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.* Ex. 17).

In the meantime, on November 26, 2002, while his direct appeal was pending before the Ohio Court of Appeals, petitioner filed a timely *pro se* petition to vacate or set aside judgment of conviction or sentence with the trial court pursuant to Ohio Rev. Code § 2953.21. (*Id.,* Ex. 18). In the petition, which was re-filed on November 27, 2002, petitioner claimed: his trial attorney failed to properly prepare for trial or investigate the case; the "Cincinnati Police and/or the Hamilton County Prosecutor engaged in misconduct by withholding and

3

suppressing information that would have given Petitioner the opportunity to form a full defense;" and the "Cincinnati Police and/or the Hamilton County Prosecutor" engaged in misconduct by tampering with evidence, "[s]pecifically the audio portion of one video tape [showing petitioner's altercation with the victim inside the store] and the video portion of another video tape" showing people entering and leaving the store where the shooting occurred. (*Id.,* Ex. 19).[3]

On June 27, 2003, the Hamilton County Court of Common Pleas denied the petition for post-conviction relief without a hearing. (*Id.,* Ex. 23). Petitioner appealed to the Ohio Court of Appeals, First Appellate District, which affirmed the trial court's judgment on September 1, 2004. (*Id.,* Exs. 25, 33).[4]

Petitioner appealed further to the Supreme Court of Ohio, and filed additional motions for expert assistance, for discovery, and for the court to obtain video tapes and DVDs. (*Id.,* Exs. 36-43). On December 29, 2004, the Supreme Court of Ohio declined jurisdiction to hear the case and summarily dismissed the appeal "as not involving any substantial constitutional question;" the court also denied as moot all the motions that petitioner had filed on appeal. (*Id.,* Ex. 45).

Petitioner commenced the instant federal habeas corpus action in April 2005. (*See* Doc. 1). Petitioner alleges thirteen grounds for relief:

> **Ground One:** Conviction obtained by tampering with evidence. Denial of right to fair trial. Denial of right to due process. Denial of right to compulsory process. Denial of right to confront and cross-examine witnesses.
>
> **Supporting Facts:** The police and prosecution tampered with the audio portion of the videotape of the shooting. They erased the threats Lewis [the victim] repeatedly shouted at Richardson. . . . Lewis' threats were erased to mislead trier of fact into believing Richardson had no reason at all to believe his life was in danger; they

---

[3] The petition was amended per corrections made to certain specified paragraphs on December 24, 2002. (Doc. 25, Ex. 20).

[4] Petitioner filed a motion for reconsideration of this decision, which was overruled on October 7, 2004. (Doc. 25, Exs. 34, 35).

were erased to bolster the prosecution's claim that Lewis did not threaten Richardson; and they were erased to weaken Richardson's defense. . . .

The police and prosecution deliberately blacked out the video portion of another store security tape which shows Richardson's behavior immediately before the shooting, and the identities of 10 to 12 eyewitnesses who ran out of the store after the shooting. . . . The police and prosecution interfered with counsel's ability to identify, locate, interview and subpoena the 10 to 12 witnesses. They obstructed Petitioner's ability to call potentially favorable witnesses to the stand. . . .

**Ground Two:** Conviction obtained by use of perjured testimony. Denial of right to fair trial.

**Supporting Facts:** As a result of Lewis' threats being erased from the videotape of the shooting, two material prosecution witnesses were able to lie about the facts that led to the shooting. Ifraj McKinney (the State's only eyewitness) testified that Lewis did not threaten Richardson. Charles Beaver (the homicide detective assigned to the case) testified that, according to the videotape, Lewis did not threaten Richardson. The prosecution played a significant role in erasing Lewis' threats. They coached McKinney to lie on the stand. They knew McKinney and Beaver were lying and failed to correct the perjured testimony. . . . The perjury directly affected a factual basis for Richardson's defense, namely, that Lewis' repeated threats caused him to believe his life was in danger. . . .

**Ground Three:** Conviction obtained by the prosecution's failure to disclose favorable evidence. Denial of right to fair trial. Denial of right to cross-examine witnesses with evidence that would have impeached their testimony. Denial of due process.

**Supporting Facts:** The police and prosecution failed to disclose the following material documents and items which are favorable to the defense: . . . [o]riginal videotape of the shooting[;] . . . [o]riginal DVD of the shooting[;] . . . [t]aped interviews of three material witnesses

that were conducted at police headquarters right after the shooting[;] ... [h]andwritten police reports and notes of interviews with Janell Irvin, Marlon Pleasant, Ifraj McKinney, Saleh Hatter, Ziad Hatter, Barry Dailey, Kim Cobb (Richardson's sister), Nathaniel Richardson, Sr. (Richardson's father), Adam Know, Lucinda Stewart, and all other witnesses[;] ... [v]ideotape from Richardson's apartment building lobby which shows his behavior immediately after the shooting, and his arrest[;] ... "Notice to Appear" citation found on Lewis right after the shooting, and Lewis' "Validated Criminal History Record[;]" . . . [o]riginal and authentic copy of the store security videotape which shows Richardson's behavior immediately before the shooting, and the identities of the 10 to 12 eyewitnesses who ran out of the store; . . . Investigation Report which was written by a Hamilton County Sheriff investigator during the sentencing phase of the trial[; and] . . . even more *Brady* material that is described in the Motion for Discovery.

**Ground Four:**  Conviction obtained as a result of police and prosecutorial misconduct.

**Supporting Facts:**  Petitioner was convicted as a result of evidence tampering, perjury, and the prosecution's failure to disclose favorable evidence. . . .

**Ground Five:**  Denial of effective assistance of counsel.

**Supporting Facts:**  Trial counsel failed to prepare for trial, did not investigate the case, and did not contact, interview or subpoena any of the 10 to 12 eyewitnesses or any other material witness.  He failed to advise Richardson of the benefits of testifying about his inability to understand the nature or quality and wrongfulness of his acts when the only way to make out the insanity defense is through his own testimony.  Counsel failed to review and bring favorable and exculpatory documents and items in evidence.  He failed to impeach the perjured testimony of two material prosecution witnesses, and did not object to false and misleading evidence.  He failed to avail himself of taped, prior statements of witnesses, and evidence which would have devastated the prosecution's case. Counsel failed to preserve for Richardson's appellate review of a constitutional claim of misconduct

6

on the part of the Cincinnati Police and the Hamilton County
Prosecutor.  Counsel did not subject the State's case to adversarial
testing, and did not fully appreciate the exculpatory potential of
evidence supporting the defense.  He failed to motion for investigative
and expert assistance for purpose of investigating the facts and
circumstances surrounding the shooting, and for purpose of
investigating police and prosecutorial misconduct.  Counsel neglected
his discovery duties in not investigating and interviewing the State's
witnesses, and in not investigating the State's evidence. . . .

**Ground Six:**  Postconviction claims not barred by res judicata.
Denial of due process and equal protection.  Denial of right to full and
fair postconviction proceedings.  Violation of Suspension Clause.

**Supporting Facts:**  The State's and state courts' erroneous assertion
that Petitioner's postconviction claims are procedurally barred by res
judicata, prevented determination on factual issues and obstructed
Petitioner's ability to gain access to further fact development
procedures. . . .

**Ground Seven:**  Conviction obtained by trial court's application of
wrong legal standard to insanity defense.  On postconviction review,
the trial court and Court of Appeals based their conclusions on
improper legal standards that obstructed Petitioner's ability to develop
facts that would prove his conviction and confinement are illegal.
Denial of right to fair trial.  Denial of right to due process.

****

**Ground Eight:** Denial of right to counsel and investigative and expert
assistance when postconviction proceedings are the functional
equivalent of a first appeal as of right because they are the first
available state court forum in which Petitioner could raise such
claims.  Inadequate state corrective process.  Denial of constitutional
right to full and fair state postconviction proceedings.  Denial of due
process, equal protection and the guarantee of fundamental fairness.
Violation of the Suspension Clause.

7

****

**Ground Nine:**  Denial of right to an independent psychiatric expert. Denial of right to attorney-client privilege.  Denial of right to due process and equal protection.  Denial of right to effective assistance of counsel.

**Supporting Facts:**  In a pretrial Motion to Employ Expert, defense counsel placed Richardson's mental state at issue and requested an order granting funds to enable him to hire an independent psychiatric expert to assist in preparation for trial.  Counsel argued the motion at a pretrial hearing where he asserted the issue of confidentiality and doctor-client privilege.  Counsel filed a plea of "not guilty by reason of insanity" and a suggestion of incompetency the same day the hearing was held.  The trial judge stated that he wanted to appoint a neutral psychiatric expert who is "neither a prosecution expert [n]or defense expert."  Defense counsel objected asserting denial of confidentiality.  The trial judge denied the motion to employ expert and ordered appointment of a neutral Court Clinic psychiatric expert to report directly to the court.  When the Court Clinic expert submitted his report to the court, the prosecution was given a copy of it.  When the prosecution and the trial judge saw that the Court Clinic expert's report was favorable to Richardson, they were displeased with the results and the trial judge appointed another psychiatric expert to examine Richardson for the prosecution so that he could rebut the Court Clinic's expert.  The defense was never provided an independent psychiatric expert. . . .

**Ground Ten:**  The sufficiency and weight of the evidence at trial is sufficient to sustain a finding of not guilty by reason of insanity. Denial of equal protection.

****

**Ground Eleven:**  Conviction obtained even though the element of criminal intent or guilty mind (mens rea) does not exist in this case and was not proven beyond a reasonable doubt.  Denial of equal protection.

8

****

**Ground Twelve:**  Conviction violates prohibition against cruel and unusual punishment.  Denial of equal protection.

**Supporting Facts:**  Prohibition against cruel and unusual punishment is violated in this case because Richardson meets the legal requirements to sustain a finding of not guilty by reason of insanity. Instead of being committed to a hospital and given proper medical and psychiatric treatment, he is convicted and sentence to 18 years to life in prison. . . .

**Ground Thirteen:** Denial of right to be tried by an impartial and neutral judge.  Denial of right to due process and equal protection.

**Supporting Facts:**  Petitioner was denied his constitutional right to be tried by a fair and impartial judge because the trial judge departed from his role as a neutral and objective factfinder and took an active role in the development of the evidence and ignored overwhelming evidence on both sides that demonstrates he is not guilty by reason of insanity. . . .

(*Id.,* pp. 9-27).

In the return of writ, respondent concedes that the petition is not barred from review on statute of limitations grounds.  (*See* Doc. 25, Brief, pp. 11-13). Moreover, it appears that petitioner has exhausted all available state court remedies with respect to his grounds for relief.  Therefore, the Court will proceed to address each of petitioner's claims in light of respondent's arguments that are asserted as defenses in the return of writ and "Supplemental Answer."

## OPINION

### A.  The Claims Alleged In Grounds Six Through Eight Challenging The State Post-Conviction Proceedings Are Not Cognizable In This Habeas Action

In Grounds Six, Seven and Eight of the petition, petitioner alleges he was denied his constitutional rights during the state post-conviction proceedings when

9

the courts: (1) improperly determined certain claims were barred from review under Ohio's *res judicata* doctrine; (2) "based their conclusions on improper legal standards;" and (3) denied petitioner the "right to counsel and investigative and expert assistance" in those proceedings.  (Doc. 1, pp. 17-22).

Respondent contends in the return of writ that petitioner has waived the claims alleged in Grounds Seven and Eight of the petition, because he failed to fairly present them to the Ohio courts.  (Doc. 25, Brief, pp. 13-19).  The Court need not address that argument, however, because petitioner's claims challenging the rulings made by the Ohio courts in the state post-conviction action are not subject to federal habeas review.

The writ of habeas corpus is not the proper means by which prisoners can challenge errors or deficiencies in state post-conviction proceedings because the claims address collateral matters and not the underlying conviction giving rise to the prisoner's incarceration.  *Kirby v. Dutton,* 794 F.2d 245, 247 (6th Cir. 1986); *see also Roe v. Baker,* 316 F.3d 557, 571 (6th Cir. 2002), *cert. denied,* 540 U.S. 853 (2003); *Davis v. Burt,* 100 Fed.Appx. 340, 351 (6th Cir. Apr. 9. 2004) (not published in Federal Reporter); *Carter v. Mitchell,* No. 1:98-CV-853, 2006 WL 2334853, at *51 (S.D. Ohio Aug. 10, 2006) (Rose, J.) (to be published).[5] Accordingly, petitioner's claims alleged in Grounds Six through Eight of the petition should be denied because they fail to allege a cognizable ground for federal habeas corpus relief.

## B.  Petitioner Has Waived The Claim Alleged In Ground Nine

In Ground Nine of the petition, petitioner claims his constitutional rights

---

[5]  It is also noted that, contrary to petitioner's contention in Ground Eight of the petition, it is well-settled by United States Supreme Court precedent that the Sixth Amendment right to counsel does not extend beyond a criminal defendant's first appeal as of right to state collateral review proceedings.  *See, e.g., Coleman v. Thompson,* 501 U.S. 722, 755-57 (1991) (relying on *Ross v. Moffitt,* 417 U.S. 600, 616 (1974), and *Pennsylvania v. Finley,* 481 U.S. 551, 556 (1987)).  Because a federal habeas court only has jurisdiction to consider whether a state prisoner's confinement violates the Constitution, laws or treaties of the United States, *see* 28 U.S.C. § 2254(a), petitioner's allegation in Ground Eight that he was denied the right to counsel in the state post-conviction proceedings does not trigger constitutional concerns.

were violated when the trial court denied his motion for appointment of an "independent psychiatric expert." (*Id.,* pp. 22-23). In the return of writ, respondent contends that petitioner has waived this claim, because he failed to fairly present it to the state courts for consideration on either direct appeal or in his state post-conviction petition.[6]  Respondent's argument has merit.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c)*; see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985); *see also O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999).

If a petitioner fails to fairly present a claim through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default to preclude review of the merits of such claim by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue relief in the state courts, the claim is subject to dismissal with prejudice as waived. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

If, because of a procedural default, petitioner has not had his claim considered by the state's highest court on the merits and he can no longer present it

_____

[6] In the return of writ, respondent also argues that petitioner has waived the prosecutorial misconduct claim alleged in Ground Three and the sufficiency of evidence claim alleged in Ground Eleven due to his procedural defaults in the state courts. (*See* Doc. 25, Brief, pp. 13-19). The undersigned assumes, without deciding, that such claims are not waived and will consider the merits of the claim alleged in Ground Eleven when addressing the non-waived sufficiency of evidence claim alleged in Ground Ten of the petition, as well as the merits of the claim alleged in Ground Three when addressing the non-waived prosecutorial misconduct claims alleged in Grounds One, Two and Four of the petition.

to the state courts, he has waived the claim for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, as respondent has argued, it appears from the record presented that petitioner procedurally defaulted the claim alleged in Ground Nine of the petition because he failed to raise it as an assignment of error on direct appeal or as a ground for relief in his state post-conviction petition.[7]

Petitioner contends in his "traverse" brief that he presented the claim of error to the state appellate courts for their consideration, by asserting it for the first time in his motion for reconsideration to the Ohio Court of Appeals from its decision affirming the denial of his post-conviction petition and in the "Statement Of The Case And Facts" section of his memorandum in support of jurisdiction on further appeal to the Supreme Court of Ohio. (*See* Doc. 27, pp. 4-6; *see also* Doc. 25, Ex. 34, pp. 11-19; Ex. 37, p. 6). However, even assuming, *arguendo,* that the Ohio Court of Appeals could reconsider its ruling based on a new claim of error, which had not been initially raised to the trial court or on appeal from the trial court's denial of post-conviction relief, petitioner is unable to overcome the fact that he committed a procedural default by failing to assert the claim as a "proposition of law" on further appeal to the Supreme Court of Ohio. Because the claim was not presented as a specific claim of error to be addressed by the state supreme court upon any granting of leave to appeal, that court would not have considered it in determining whether or not to allow an appeal in the first place.

Therefore, the undersigned concludes that by failing to present the claim alleged in Ground Nine of the petition as a "proposition of law" in his jurisdictional memorandum to the Supreme Court of Ohio, petitioner committed a procedural default, which has resulted in the waiver of such claim absent a

---

[7] It is noted that if petitioner had asserted such a claim in his petition for post-conviction relief, the trial court could have properly found the record-based claim to be barred from review under Ohio's *res judicata* doctrine, because it could have been presented as an assignment of error on direct appeal. *See State v. Perry,* 226 N.E.2d 104, 108 (Ohio 1967).

showing of cause and prejudice or a "fundamental miscarriage of justice." *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87. Petitioner has neither shown "cause" for his default nor demonstrated that a fundamental miscarriage of justice will occur or, in other words, that the alleged constitutional violation "probably resulted in the conviction of one who is actually innocent" of the charged murder offense. *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995).

Accordingly, the claim alleged in Ground Nine of the petition should be denied with prejudice as waived.

### C. Petitioner Is Not Entitled To Relief Based On the Prosecutorial Misconduct Claims Alleged In Grounds One Through Four Of the Petition

In Grounds One through Four of the petition, petitioner claims that he was denied due process and a fair trial due to certain acts of misconduct allegedly committed by the State in prosecuting the criminal charges against him. Specifically, petitioner contends that the police and prosecutor tampered with (1) the audio portion of the store security video tape, which recorded the shooting, by erasing threats that the victim "repeatedly shouted" at petitioner, and (2) the video portion of another store security tape by "black[ing] out" those sections showing petitioner's "behavior immediately before the shooting, and the identities of 10 to 12 eyewitnesses" who ran out of the store immediately after the shooting. (Doc. 1, pp. 9-11). Petitioner also alleges that the prosecutor coached two material State witnesses to present perjured testimony at trial. (*Id.*, pp. 11-12). Finally, petitioner asserts that the police and prosecutor withheld a number of specified evidentiary items from the defense, which he claims were both material and exculpatory in nature. (*Id.,* pp. 12-16).

Petitioner first presented the claims of evidence tampering and the withholding of favorable evidence in his state post-conviction petition.[8] (*See* Doc.

---

[8] Petitioner did not allege in his state petition, as he does here, that witnesses were coached to lie at his trial. Only in his lengthy brief in reply to the State's opposition memorandum, did petitioner briefly mention that he "believe[d] . . . the police and/or the prosecution . . . told [a witness] to feel free to lie about what was said during the incident between [the victim] and petitioner, because you cannot hear what [the victim] is saying on the tape." (Doc. 25, Ex. 22, p. 14).

25, Exs. 18-20).  The trial court rejected these claims of error because petitioner had not attached "supporting documentation, from any witness, demonstrating how or why the State withheld or tampered with evidence."  (*Id.,* Ex. 23, p. 3).  The court reasoned further: "Richardson speculates that police did these things, but offers not a scintilla of evidence.  Such speculation does not meet the minimum level of cogency to warrant a hearing."  (*Id.*).

The Ohio Court of Appeals, which was the last state court to issue a decision addressing petitioner's claims on the merits, affirmed the trial court's decision.  In so ruling, the court reasoned in relevant part:

> Richardson alleges that the police and the prosecution tampered with the tape of the shooting.  He has not submitted any evidence in support of this claim apart from his self-serving affidavit, which is insufficient to establish this claim.  See *State v. Kapper* (1983), 5 Ohio St. 3d 36, 448 N.E.2d 823.  Claims for postconviction relief must meet a threshold level of cogency and consist of more than "mere hypothesis."...  His claim of evidence tampering was entirely hypothetical and "too speculative to warrant an evidentiary hearing."...

> With respect to Richardson's claim that the prosecution "withheld" evidence, issues involving evidence known to exist at the time of trial could have been raised at trial and on direct appeal, and, therefore, they are barred by res judicata. . . .  Further, Richardson has failed to establish that the prosecution withheld any evidence favorable to him.

(*Id.*, Ex. 33, p. 2) (state case citations omitted).

As an initial matter, although not raised as a defense by respondent, a strong argument can be made that the Ohio courts' denial of post-conviction relief based on petitioner's failure to submit sufficient evidentiary documentation in support of his claims constitutes an "adequate and independent" state ground, which precludes federal habeas review of the merits of the constitutional claims alleged in Grounds One through Four of the petition absent a showing of cause and prejudice or that a fundamental miscarriage of justice will occur if such claims are not

14

considered herein.  *See Lorraine v. Coyle,* 291 F.3d 416, 426-27 (6th Cir.) (state court's finding of procedural default stemming from the petitioner's failure "to present the necessary proof in the state postconviction review," constitutes an independent state ground deemed adequate to bar federal habeas review because it has been "routinely and regularly applied in the Ohio courts") (citing *State v. Calhoun,* 714 N.E.2d 905, 910 (Ohio 1999), and *State v. Jackson,* 413 N.E.2d 819, 823 (Ohio 1980)), *corrected on other grounds on denial of rehearing,* 307 F.3d 459 (6th Cir. 2002), *cert. denied,* 538 U.S. 947 (2003); *Palmer v. Bagley,* No. 1:00-CV-882, 2005 WL 3965400, at *25 (S.D. Ohio Dec. 16, 2005) (Merz, M.J.) (and cases cited therein) (unpublished), *adopted,* 2006 WL 1027733 (S.D. Ohio Apr. 17, 2006) (Rose, J.) (unpublished).[9]

In any event, the undersigned agrees with the state courts' determination that petitioner has not shown a factual basis exists for his claims of constitutional error. First, petitioner has presented no evidence to substantiate his claim that the police and prosecution tampered with the audio and video portions of tape recordings of the incident, which were obtained at the scene from store security cameras.  In fact, the undersigned could detect no evidence of tampering upon review of the video tape of the shooting that was introduced into evidence at

---

[9] *See also Darell Anderson v. Alan Lazaroff,* Case No. 1:05cv584 (Dlott, J.; Hogan, M.J.) (Docs. 7, 9, 10) (adopting Report and Recommendation to deny a state prisoner's federal habeas petition on waiver grounds in part because the trial court, which was the only state court to render a reasoned opinion addressing claims raised in the petitioner's post-conviction petition, "clearly and expressly" relied on independent and adequate state grounds when it denied review of record-based claims under Ohio's *res judicata* doctrine and found that petitioner had failed to submit "sufficient evidentiary documentation" to support any non-record-based claim).

trial.[10]  Although most of what was said on the tape was muffled and thus difficult, if not impossible, to understand, it appears to have been a general problem with the tape itself stemming from the quality of the video camera's audio reception component rather than any deliberate impropriety on the part of the police or prosecution.

Petitioner also has presented no evidence to support his claim that the prosecution coached two State witnesses to lie at his trial about whether the victim actually threatened petitioner before the shooting occurred.  Indeed, it is difficult to give any credence to such a claim, because the issue as to whether or not threats were made prior to the shooting is not a factor relevant to the ultimate determination of the validity of petitioner's not-guilty-by-reason-of-insanity defense.

As defense counsel conceded in closing argument, petitioner could not argue that he acted in self-defense when the video tape of the shooting clearly showed petitioner running up behind the victim and shooting him in the back of the head. (*See* Doc. 31, Ex. 46, Vol. II, Tr. 295-97).  Instead, as defense counsel pointed out, the "not guilty by reason of insanity plea focuses on the defendant.  It focuses on the defendant's beliefs, *whether they be right or wrong,* and on the defendant's thinking." (*Id.,* Tr. 296) (emphasis added).  Therefore, assuming the prosecutor would have even contemplated resorting to such an extreme degree of impropriety in obtaining a conviction, it is highly unlikely State witnesses were coached to lie

_____

[10]  The other store security video tape, which petitioner alleges was partially "blacked out" by the police and prosecution, was neither introduced into evidence at trial nor made part of the record in this case.  However, there is no evidence in the record to suggest that the "blacked out" portion of this tape was not an accurate recording of an obstruction blocking the camera's view.  In addition, petitioner has not demonstrated that any tape showing him outside the store immediately before the shooting, as well as 10 to 12 people running out of the store after the shooting, would elicit relevant evidence favorable to the defense.  Although petitioner generally avers that he was thereby prevented from finding "*potentially* favorable witnesses," it appears from attachments to pleadings submitted by petitioner in the state post-conviction proceeding that he in fact obtained lists of witnesses, including eyewitnesses, who were interviewed by the police after the incident.  (Emphasis added; *see* Doc. 25, Ex. 19, Attachment 3; Ex. 22, Attachment 1).  To the extent petitioner may not have been informed of the witness lists prior to his trial, he has not provided the substance of any testimony from these witnesses that would have aided him at trial.  Therefore, petitioner's allegations are simply too speculative to give rise to an actionable constitutional claim.

about facts that had no bearing on the determination of guilt or innocence in this case.

The trial record is devoid of evidence even remotely suggesting that the State engaged in evidence tampering or the presentation of perjured testimony. As the state courts found, the only evidence supporting petitioner's claims is derived from his own self-serving statements, which lack credibility. *Cf. Snyder v. Grayson,* 872 F. Supp. 416, 420 (E.D. Mich. 1994) (and cases cited therein) ("it is well established that a self-serving habeas affidavit is not sufficient to establish a constitutional violation"), *aff'd,* 57 F.3d 1070 (6th Cir.), *cert. denied,* 516 U.S. 884 (1995); *Goodballet v. Mack,* No. 4:00-CV-122, 2003 WL 21353748, at *3-4 (N.D. Ohio Apr. 8, 2003) (unpublished); *Ushery v. Sheets,* No. 1:03cv933, 2006 WL 2468279, at *9, 11 & n.6 (S.D. Ohio Feb. 22, 2006) (Report and Recommendation) (Black, M.J.) (unpublished) (citing *State v. Kapper,* 448 N.E.2d 823, 826 (Ohio), *cert. denied,* 464 U.S. 856 (1983)).[11]  Petitioner's unsubstantiated, serious allegations of malfeasance on the part of the police and prosecution are particularly suspect given that both the State and defense expert witnesses, who gave conflicting opinions at trial on the insanity defense issue, were in agreement that petitioner suffers from a severe paranoid delusional disorder of a "persecutory type." (Doc. 31, Ex. 46, Vol. II, Tr. 164-65, 238-39).

Finally, petitioner has failed to show under the applicable standard of review enunciated by the Supreme Court in *Brady v. Maryland,* 373 U.S. 83 (1963), that he was denied due process because the prosecutor withheld certain items of evidence from the defense.

In *Brady*, the Supreme Court held that the prosecution is required by the Fourteenth Amendment's Due Process Clause to disclose evidence in its possession that is both favorable to the accused and material to guilt or punishment. *Brady,* 373 U.S. at 87; *see also United States v. Bagley,* 473 U.S. 667, 674 (1985). *Brady* did not create a broad constitutional right of discovery in a criminal case, but rather is premised on "the avoidance of an unfair trial to the accused," *Brady,* 373 U.S. at 87. *Bagley,* 473 U.S. at 675 & n.6-7. Therefore, "the prosecutor is not required to deliver his entire file to defense counsel, but only to

---

[11]  The Report and Recommendation in *Ushery* was adopted by the district judge on August 24, 2006. *See Ushery v. Sheets,* Case No. 1:03cv933 (Weber, S.J.) (Docs. 12, 13). Petitioner has filed a notice of appeal to the Sixth Circuit in that case.

disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *Id.* at 675.

To establish a *Brady* violation, it must be shown that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the suppressed evidence was material to guilt or punishment, "irrespective of the good faith or bad faith of the prosecution." *Moore v. Illinois,* 408 U.S. 786, 794-95 (1972); s*ee also Brady,* 373 U.S. at 87; *Bowling v. Parker,* 138 F.Supp.2d 821, 880 (E.D. Ky. 2001), *aff'd,* 344 F.3d 487 (6th Cir. 2003), *cert. denied,* 542 U.S. 842 (2004).  Evidence is deemed "material" under *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley,* 473 U.S. at 682.  "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome" of the trial.  *Id.*  "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs,* 427 U.S. 97, 109-10 (1976).  This standard for determining materiality focuses on the defendant's guilt or innocence, rather than on the impact of the undisclosed evidence on the defendant's ability to prepare for trial.  *United States v. Phillip,* 948 F.2d 241, 249 (6th Cir. 1991) (citing *Agurs,* 427 U.S. at 112 n.20), *cert. denied,* 504 U.S. 930 (1992).

Impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule.  *Bagley,* 473 U.S. at 676.  On the other hand, evidence that tends to inculpate the defendant or that is neither facially exculpatory nor impeaching does not fall under *Brady*'s proscription.  *United States v. Simpson,* 901 F.2d 1223, 1228 (5th Cir. 1990); *United States v. Comosona,* 848 F.2d 1110, 1115 (10th Cir. 1988); *cf. Agurs,* 427 U.S. at 112 n.20; *Phillip,* 948 F.2d at 250.

Here, petitioner has not demonstrated that any of the specified items of evidence claimed to have been withheld were in fact exculpatory in nature.  Nor has petitioner established that any of these evidentiary materials were relevant or material to the determination of guilt or punishment in this case.

To the extent petitioner contends that some of these materials possibly contain exculpatory information that might have aided the defense, his claim is too speculative to satisfy the *Brady* materiality standard.  *Cf. Agurs,* 427 U.S. at 109-10.  Moreover, to the extent petitioner argues that he should have been provided

copies of police reports and notes or tapes of police interviews with various witnesses for impeachment purposes, his claim must fail because under Ohio R. Crim. P. 16(B)(2), the prosecutor was not required to disclose such materials absent a motion lodged by the defense upon completion of a witness's direct examination at trial requesting an *in camera* inspection of the witness's prior statement to the police to determine "the existence of inconsistencies, if any, between the testimony of such witness and the prior statement." *See* Ohio R. Crim. P. 16(B)(1)(g).

Accordingly, in sum, the undersigned concludes that petitioner is not entitled to habeas relief based on the claims of prosecutorial misconduct alleged in Grounds One through Four of the petition, because he has not demonstrated a factual basis exists supporting such claims.

### D.  Petitioner Is Not Entitled To Habeas Relief Based On The Ineffective Assistance Of Trial Counsel Claims Alleged In Ground Five

In Ground Five of the petition, petitioner contends that in violation of the Sixth Amendment, he was denied effective assistance of counsel during his criminal trial.  (Doc. 1, p. 17).

Petitioner specifically claimed in his state post-conviction petition that his trial counsel was ineffective because he "failed to properly prepare for trial[,] . . . did not investigate the case" and did not interview the 10 to 12 eyewitnesses to the shooting.  (Doc. 25, Ex. 18, pp. 4-5).  He also suggested that his attorney was ineffective in failing to "make a 16B motion to check [State witness] McKinney's prior statements" and in failing to request "to have the audio portion of [the] video tape [of the shooting] enhanced or filtered so that the trier of fact could hear exactly what went on during the incident."  (*Id.,* pp. 6, 13).

In its decision denying post-conviction relief, the trial court rejected petitioner's claims based on the following conclusions of law:

(1) Richardson has failed to submit documentation supporting his claim of incompetent counsel.

19

Decisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics. The mere failure to subpoena witnesses for a trial is not a substantial violation of defense counsel's essential duty absent a showing of prejudice. . . .

(2) Richardson has failed to proffer any documentation or affidavit from any witness which demonstrates that the testimony would have changed the outcome of his trial. Defendant has attached excerpts from the trial transcript. To the extent this claim is based on matters in the trial record, it is barred by res judicata. . . .

(3) Richardson has failed to overcome the presumption of competency which attaches to a properly licensed attorney. He has failed to submit any documentation indicating a reasonable possibility that, but for counsel's "errors," the result of the trial would have been different....

(4) Richardson's affidavits are self-serving and thus entitled to little weight. . . .

(*Id.,* Ex. 23, pp. 2-3) (state case citations omitted).

The Ohio Court of Appeals, which was the last state court to issue a reasoned opinion in the matter, affirmed the trial court's decision in pertinent part as follows:

To prevail on his claims of ineffective assistance of trial counsel, Richardson had to submit evidentiary documents containing sufficient operative facts to demonstrate that his counsel's performance fell below an objective standard of reasonableness and that counsel's performance prejudiced him. See *Strickland v. Washington* (1984), 466 U.S. 668. . . . In order to establish prejudice, Richardson had to demonstrate that his trial counsel's deficient performance "so undermined the proper functioning of the adversarial process that the trial could not have produced a just result." See *State v. Powell* (1993), 90 Ohio App.3d 260, 629 N.E.2d 13, citing *Lockhart v. Fretwell* (1993), 506 U.S. 364 . . ., and *Strickland,* supra.

20

Richardson has submitted no documents to support his claims of ineffective assistance of counsel other than his own self-serving affidavit, which is entitled to little weight. . . .

Richardson has failed to overcome the presumption that, under the circumstances, the failure to call certain unnamed witnesses might have been sound trial strategy. . . . Further, Richardson has not demonstrated that the testimony of any of these unnamed witnesses would have affected the outcome of the trial.

Richardson's assertions that trial counsel was ineffective because counsel failed to show that the police and the prosecution had tampered with evidence and failed to procure and introduce into evidence an "unaltered" audio/video tape of the shooting are speculative and completely unsupported by any documentation.

(*Id.,* Ex. 33, pp. 2-3) (state case citations omitted).

Under the applicable standard of review set forth in 28 U.S.C. § 2254(d), petitioner is not entitled to relief in this federal habeas corpus proceeding unless the state court's adjudication of his constitutional claims stemming from the allegations of ineffective assistance resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942. An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to

the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.).

Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also Bell v. Cone,* 535 U.S. 685, 694 (2002); *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942.

The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

In this case, the Ohio Court of Appeals correctly identified and applied the proper standard of review that was clearly established by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984), in assessing the merits of petitioner's ineffective assistance of counsel claims. As the state court recognized, in order to establish a Sixth Amendment violation under *Strickland*, the petitioner must demonstrate: (1) his attorney made such serious errors he was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) his attorney's deficient performance prejudiced the defense by undermining the reliability of the trial result. *See id.* at 687.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *See id.* at 688. Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from

counsel's perspective at the time of the conduct. *Id.* at 689. In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See id.*

In order to satisfy the second "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the trial and appeal proceedings would have been different. *See id.* at 694. Petitioner has met his burden if he shows that the result of his trial would "reasonably likely have been different absent the errors." *See id.* at 695.

The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance. The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground. *See id.* at 697.

In applying the *Strickland* standard of review to petitioner's specific claims of error, the Ohio Court of Appeals first reasonably determined that petitioner had not presented sufficient credible evidence to support his contention that his trial counsel was ineffective during the pre-trial preparation and investigation of the case.

Counsel is obligated "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Kimmelman v. Morrison,* 477 U.S. 365, 384 (1986) (quoting *Strickland,* 466 U.S. at 691); *see also Sims v. Livesay,* 970 F.2d 1575, 1580 (6th Cir. 1992); *Workman v. Tate,* 957 F.2d 1339, 1345 (6th Cir. 1992). Therefore, the failure to investigate or contact potentially exculpatory witnesses "constitutes negligence, not trial strategy." *Cathron v. Jones,* 77 Fed.Appx. 835, 841 (6th Cir. Oct. 2, 2003) (not published in Federal Reporter) (citing *Workman,* 957 F.2d at 1345), *cert. denied,* 542 U.S. 907 (2004); *see also Austin v. Bell,* 126 F.3d 843, 848 (6th Cir. 1997), *cert. denied,* 523 U.S. 1079, 1088 (1998).

On the other hand, defense counsel is under no duty "to call or even interview a witness whose testimony would not have exculpated the defendant." *Millender v. Adams,* 187 F.Supp.2d 852, 877 (E.D. Mich. 2002), *aff'd,* 376 F.3d

520 (6th Cir. 2004), *cert. denied,* 544 U.S. 921 (2005).  Moreover, under the "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's alleged negligence, the result of the trial would have been different.  *See Strickland,* 466 U.S. at 694.

When the petitioner's claim is based on counsel's failure to investigate, where it is all too easy to hypothesize about "what might have been" if a different trial tactic had been adopted, the petitioner cannot demonstrate prejudice without a "comprehensive showing as to what the investigation would have produced." *Sullivan v. Fairman,* 819 F.2d 1382, 1392 (7th Cir. 1987); *cf. Austin,* 126 F.3d at 848 (rejecting petitioner's claim that his trial attorney was ineffective in failing to interview witnesses other than himself and one other person, because petitioner "did not identify any other leads that . . . should have been investigated that would have reasonably resulted in a different verdict").

Here, petitioner has listed witnesses, whom he claims his counsel should have investigated or interviewed.  As noted above, *see supra* p. 15 n.10, petitioner had access to witness lists containing contact information for these witnesses at least by the time he pursued state post-conviction relief.  However, other than generally averring the witnesses might provide favorable testimony and submitting his own self-serving affidavit as evidence in support of this claim, petitioner has never submitted affidavits from the listed witnesses detailing the substance of any testimony they would have given that would tend to exculpate him or to prove the defense theory that he was legally insane when he shot the victim.

"[A] petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material."  *Hutchison v. Bell,* 303 F.3d 720, 748-49 (6th Cir. 2002) (citing *Austin,* 126 F.3d at 848, and *Martin v. Mitchell,* 280 F.3d 594, 608 (6th Cir.), *cert. denied,* 537 U.S. 1004 (2002), *and cert. denied,* 539 U.S. 938 (2003)), *cert. denied,* 539 U.S. 944 (2003).  In the absence of any showing specifying the pre-trial investigation that should have been conducted and how such investigation would have aided the defense, it was reasonable for the Ohio courts to conclude that petitioner had not demonstrated a factual basis for this ineffective assistance of counsel claim.  *Cf. id.* at 748 (holding that "[g]iven the absence of proof at [petitioner's] postconviction hearing, the state court's application of the *Strickland* test was not objectively unreasonable," in case where on state collateral review, the

petitioner "failed to present any witnesses who could have been called by trial counsel at his evidentiary hearing or provide any facts as to what testimony the witnesses would have offered at his trial").[12]

Second, it was reasonable for the Ohio Court of Appeals to reject as "speculative and completely unsupported by any documentation" petitioner's further claims of ineffectiveness based on defense counsel's failure to argue that the police and prosecution had tampered with evidence, and to seek discovery of the original "unaltered" store security tape recordings of the events surrounding the shooting. As the state courts reasonably found, and as discussed above in addressing petitioner's corollary prosecutorial misconduct claims, *see supra* pp. 15-18, other than petitioner's own suspect self-serving statements, there is simply no evidence in the record to suggest that the prosecution or police tampered with or otherwise altered the store security video tapes obtained from the crime scene.

The state courts did not address petitioner's additional claims of ineffectiveness stemming from defense counsel's alleged failure (1) to seek review of State witness Ifraj McKinney's prior statements to the police after her direct examination at trial to determine if any inconsistencies existed for impeachment purposes, and (2) to request that the audio portion of the video tape of the shooting be enhanced. These claims, however, are purely speculative.

Petitioner has suggested that McKinney may have made inconsistent statements as to whether she overheard the victim threaten petitioner prior to the shooting, and that the trier of fact might have been able to hear such threats in fact were made if counsel had requested and been able to obtain an enhancement to the audio portion of the video tape of the shooting. As discussed above, *see supra* p. 16, the issue whether or not the victim actually threatened petitioner prior to the shooting was not relevant in determining whether or not petitioner met the criteria for the insanity defense–i.e., that he had a "severe mental disease or defect," which prevented him from understanding the "wrongfulness" of his conduct at the time he

---

[12] For this reason, and because as discussed above, *see supra* pp. 15-18, petitioner has not demonstrated a factual basis exists for his police and prosecutorial claims, the undersigned also rejects petitioner's allegation asserted for the first time in the instant matter that his trial counsel was ineffective in failing to file a motion "for investigative and expert assistance for purpose of investigating the facts and circumstances surrounding the shooting, and for purpose of investigating police and prosecutorial misconduct." (*See* Doc. 1, p. 17).

shot the victim. *See* Ohio Rev. Code § 2901.01(A)(14).

Indeed, there was no dispute between the State and defense expert witnesses, who were called to testify at trial to give their differing opinions on the insanity defense issue, regarding petitioner's perception of the events at the store. Both experts testified that petitioner said he was verbally harassed and threatened by the victim prior to the shooting. (*Id.,* Tr. 153-54, 241). Therefore, the issue whether or not such threats actually were made was not a factor at issue in the case. Rather, the question turned on whether petitioner's mental illness may have caused him to have paranoid delusional thoughts about the victim and the danger he posed after their altercation at the store, which affected petitioner's ability to understand the wrongfulness of his subsequent actions that resulted in the victim's death.

Accordingly, because the additional alleged errors of omission presented to but not addressed by the state courts did not pertain to an issue relevant to a determination of guilt or innocence in this case, petitioner has not shown such challenged conduct fell outside the wide range of reasonable professional assistance or prejudiced the defense.

Finally, petitioner has alleged additional general claims of ineffectiveness in the instant federal habeas petition, which are too vague and conclusory to trigger any concerns of error rising to the level of a constitutional violation. To the extent petitioner has asserted more specific allegations of error, for the reasons given in rejecting his prosecutorial misconduct claims, *see supra* pp. 15-18, petitioner has not shown that his trial counsel was ineffective in failing to "bring favorable and exculpatory documents and items in evidence," in failing to "impeach perjured testimony" or to "object to false and misleading evidence," and in failing "to preserve for . . . appellate review [the claims] of misconduct on the part of the Cincinnati Police and the Hamilton County Prosecutor." (*See* Doc. 1, p. 17).

Moreover, to the extent petitioner argues for the first time that his counsel was ineffective in failing to call him to testify in his own defense at trial as "the only way to make out the insanity defense," he has not demonstrated that counsel's conduct amounted to anything other than "sound trial strategy." *Cf. Regelin v. Jackson,* No. 04-CV-70814-DT, 2006 WL 467905, at *20 (E.D. Mich. Feb. 24, 2006) (unpublished) (finding under *Hutchison,* 303 F.3d at 749, that petitioner had "not rebutted the presumption that trial counsel's conduct in advising him not to testify constituted sound trial strategy").

26

Accordingly, in sum, petitioner is not entitled to habeas relief based on his numerous claims of ineffective assistance by his trial counsel, which are alleged in Ground Five of the petition.

### E.  Petitioner Is Not Entitled To Relief Based On His Claims Alleged In Grounds Ten And Eleven Challenging The Sufficiency Of Evidence

In Grounds Ten and Eleven of the petition, petitioner essentially alleges that the evidence was insufficient to support the *mens rea* element of the murder offense, because the evidence introduced at trial establishes that he was legally insane when he shot the victim.  (Doc. 1, pp. 23-25).

The Ohio Court of Appeals was the only state court to address the merits of this claim to the extent petitioner contended on direct appeal that his conviction was against the manifest weight of the evidence.  (*See* Doc. 25, Ex. 11, pp. 4-12; Ex. 13).[13]  The court rejected the assignment of error, making findings of fact, which are presumed correct, *see supra* p. 2 n.1, and reasoning in relevant part as follows:

> The defense of not guilty by reason on insanity is an affirmative defense that must be proved by the defendant by a preponderance of the evidence.[]  A person is not guilty by reason of insanity only if the person proves "that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts."[]

> In this case, the experts for the state and the defense testified that Richardson was suffering from a severe mental disease or defect at the time of the offense.  But the experts disagreed about Richardson's

---

[13]  Although not raised as a defense by respondent, a strong argument can be made that petitioner's constitutional sufficiency-of-evidence claim is waived, because petitioner only argued to the state courts that his conviction was against the weight of the evidence.  Unlike a federal due process claim, a claim that a conviction was against the manifest weight of the evidence raises an issue of state-law only that is not subject to federal habeas review.  *See Tibbs v. Florida,* 457 U.S. 31, 41-47 (1982); *State v. Thompkins,* 678 N.E.2d 541, 546-48 (Ohio 1997), *superseded by state constitutional amendment on other grounds, State v. Smith,* 684 N.E.2d 668 (Ohio 1997), *cert. denied,* 523 U.S. 1125 (1998); *see also* 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984).  However, because respondent has not defended on this ground, the undersigned will address such claim on the merits herein.

knowledge of the wrongfulness of his acts at the time.

On behalf of the state, James R. Hawkins, M.D., testified that, in his opinion, Richardson was aware of the wrongfulness of his actions and that shooting the victim was wrong.  Dr. Hawkins testified that he based his opinion on the fact that Richardson had managed his delusional beliefs for years, using relatively appropriate measures. Dr. Hawkins also based his opinion on the facts of the offense.  He noted that, just before the shooting, Richardson had not responded to the victim's profanities.  Instead, Richardson left the store and then returned and calmly shot the victim.  Following the shooting, Richardson turned his two guns over to a security guard in his apartment building and called the police to turn himself in.

David Chiappone, Ph.D., testifying for the defense, opined that Richardson's severe mental defect had kept him from knowing right from wrong at the time of the offense.  Dr. Chiappone testified that Richardson's delusions made him feel threatened by the victim and that he thought that the victim was going to kill him.

The trial court accepted Dr. Hawkins's testimony that Richardson was aware of the wrongfulness of his actions at the time of the offense. "The weight to be given the evidence and the credibility of the witnesses concerning the establishment of the defense of insanity in a criminal proceeding are primarily for the trier of the facts."[] We cannot say that the trial court lost its way in finding that Richardson had failed to overcome the presumption of his sanity by a preponderance of the evidence.[]

(*Id.*, Ex. 13, pp. 2-3) (footnotes to state case and statutory citations omitted).

As an initial matter, to the extent petitioner contends the evidence was insufficient to support his murder conviction because he met his burden of proving by a preponderance of evidence that he was not guilty by reason by insanity, petitioner has not alleged a cognizable ground for federal habeas relief.  Because the Due Process Clause requires proof  beyond a reasonable doubt of the elements of the crime charged, federal habeas corpus review of a state conviction is limited to determining whether there was sufficient evidence to support the elements of the

offense as defined by the State.  *Allen v. Redman,* 858 F.2d 1194, 1196-98 (6th Cir. 1988) (citing *Engle v. Isaac,* 456 U.S. 107, 119-21 (1982), and *Duffy v. Foltz,* 804 F.2d 50, 54 (6th Cir. 1986)).[14]

Here, petitioner was charged with murder under Ohio Rev. Code § 2903.02(A), which provided in pertinent part that "[n]o person shall purposely cause the death of another."   Under Ohio law, a person acts "purposely" when "it is his specific intention to cause a certain result."  Ohio Rev. Code § 2901.22(A). Therefore, to establish petitioner's guilt in this case, the State was required only to produce evidence showing beyond a reasonable doubt that petitioner intended to cause the victim's death when he shot the victim in the back of the head at close range.

In contrast, as the Ohio Court of Appeals recognized, the defense of not guilty by reason of insanity is an affirmative defense for which the defendant has the burden of proof.  *See* Ohio Rev. Code § 2901.01(A)(14) and § 2901.05(A).  A determination that petitioner's mental illness prevented him from understanding the criminality of his act does not mean he lacked the requisite *mens rea* for the murder offense charged against him.  *See State v. Hancock,* 840 N.E.2d 1032, 1043 (Ohio 2006); *see also Howze v. Marshall,* 716 F.2d 396, 399-400 (6th Cir. 1983) (affirming decision upholding the constitutionality of Ohio statute placing burden of proving the affirmative defense of insanity on the defendant), *cert. denied,* 465 U.S. 1013 (1984).  Therefore, any claim by petitioner that his murder conviction violates due process because he met his burden of proving his not-guilty-by-reason-of-insanity defense does not give rise to a cognizable constitutional issue. *Cf. Caldwell v. Russell,* 181 F.3d 731, 740 (6th Cir. 1999); *Allen,* 858 F.2d at 1196-1200; *Duffy,* 804 F.2d at 54; *Booth v. Carlton,* 110 F.3d 63 (table), No. 95-6448,

---

[14]  *See also Caldwell v. Russell,* 181 F.3d 731, 740 (6th Cir. 1999) ("the due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime"); *cf. Booth v. Carlton,* 110 F.3d 63 (table), No. 95-6448, 1997 WL 135495, at **2 (6th Cir. Mar. 24, 1997) (unpublished) (habeas review precluded with respect to claim challenging the sufficiency of evidence to convict in light of evidence establishing that the petitioner acted in self-defense, "because the due process guarantee of sufficiency of the evidence extends only to facts needed to establish the elements of the crime and not to the state's burden to prove the absence of an affirmative defense"); *Crawford v. Straub,* No. CIV. 00-CV-70392-DT, 2001 WL 85871, at *7 (E.D. Mich. Jan. 11, 2001) (unpublished).

1997 WL 135495, at **2 (6th Cir. Mar. 24, 1997) (unpublished).[15]

By the same token, however, the Supreme Court recently rejected the position taken by the State in that case that "*mens rea* and insanity, as currently understood, are entirely distinguishable, so that mental-disease and capacity evidence relevant to insanity is simply irrelevant to *mens rea*." *Clark v. Arizona,* 126 S.Ct. 2709, 2730 n.38 & 2731 (2006). Instead, the Court emphasized that evidence presented by a defendant tending to show that he "suffers from mental disease and lacks capacity to form *mens rea* is relevant to rebut evidence that he did in fact form the required *mens rea* at the time in question," which the prosecution has the burden to prove. *Id.* at 2731.

Here, upon review of the entire record (including the evidence that the defense introduced to establish the insanity defense), the undersigned concludes that there was sufficient evidence presented to establish petitioner's guilt for murder.

The Supreme Court's decision in *Jackson v. Virginia,* 443 U.S. 307 (1979), governs the resolution of this issue. The Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense. *In Re Winship,* 397 U.S. 358, 363-64 (1970). When petitioner raises a sufficiency of evidence claim in a petition for a writ of habeas corpus, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

This standard does not require the State to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, under this standard, "a

---

[15]  *See also Clark v. Arizona,* 126 S.Ct. 2709, 2729-30 (2006) (pointing out that there is a "presumption of sanity" recognized in *Leland v. Oregon,* 343 U.S. 790, 799 (1952), which "dispenses with the requirement on the government's part to include as an element of every criminal charge an allegation that the defendant had [the] capacity" to "form the *mens rea* necessary for a verdict of guilt and the consequent criminal responsibility"); *cf. Patterson v. New York,* 432 U.S. 197, 210 (1977) (stating that "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required," and declining to fashion such a rule in that case).

federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir.), *cert. denied,* 464 U.S. 951, 962 (1983). It is the jury's responsibility as the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not permitted to make its own subjective determination of guilt or innocence or otherwise substitute its opinion for that of the jury which convicted the petitioner. *Id.* at 318-19 & n.13; *see also York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (*per curiam*), *cert. denied,* 490 U.S. 1049 (1989).

In this case, as the Ohio Court of Appeals reasonably found, the State's expert, Dr. Hawkins, testified that in his opinion, "to a reasonable degree of medical certainty," petitioner suffered "from a serious illness, the paranoid delusion disorder, but that he did know the difference between right and wrong at the time of the offense." (Doc. 31, Ex. 46, Vol. II, Tr. 170-71). As the state court pointed out, this opinion was based on the fact that petitioner had "these [delusional] beliefs for years and years . . . and . . . ha[d] managed these beliefs by staying away from people, barricading himself, calling the police; all, relatively speaking, appropriate measures." (*Id.,* Tr. 194-95).

In addition, most significantly, the State's expert relied on the facts surrounding the shooting incident itself. Specifically, Dr. Hawkins pointed out that petitioner must have known the wrongfulness of his actions, because "otherwise, he wouldn't have turned his gun(s) over, [or] called the police" immediately after the shooting. (*Id.,* Tr. 166). Also, petitioner exhibited "some remorse" for causing the victim's death during his interview, which suggested to Dr. Hawkins that petitioner had a "conscience, that he knew he had done something wrong." (*Id.,* Tr. 161-62, 166). Finally, Dr. Hawkins opined that based on what petitioner told him about the events that transpired and the feelings he experienced at the time of the incident, which included anger towards the victim, "[t]here was nothing that he said to me that made me believe that he didn't know that what he did was wrong." (*Id.,* Tr. 153-55, 161, 162-63, 170).

Throughout his direct and cross-examination, Dr. Hawkins remained firm in his opinion that petitioner knew the wrongfulness of his actions at the time he

killed the victim. (*See id.,* Tr. 192, 194-95, 208-09). On the other hand, Dr. Chiappone, who testified in favor of the insanity defense, conceded that he "struggled" with the issue, because it involved only "delusional thinking" as opposed to the "typical case" involving hallucinations or the hearing of voices on the part of the defendant at the time of the offense. (*Id.,* Tr. 270, 278). Indeed, Dr. Chiappone stated that he only had "seen one other [such] case" involving "just delusional" thinking. (*Id.,* Tr. 278).

According to Dr. Chiappone, at the time petitioner shot the victim, petitioner was "so disturbed in terms of paranoia, everything [was] a threat, that he thought [the victim] imminently was going to kill him." (*Id.,* Tr. 270). In other words, it was Dr. Chiappone's opinion that petitioner acting out of "his paranoid ideation," believed he was justified in shooting the victim in order to protect himself. (*See id.,* Tr. 272, 274-75). In so concluding, however, Dr. Chiappone admitted that he did not have a "good explanation" for petitioner's continued belief that he was in danger at the time of the shooting, in light of the undisputed evidence that petitioner's "initial interaction" with the victim had ended, with petitioner leaving the store before he returned and shot the victim. (*Id.*, Tr. 270).

Significantly, neither Dr. Hawkins nor Dr. Chiappone viewed the video tape of the shooting in assessing whether or not petitioner met the criteria of the not-guilty-by-reason-of-insanity defense. (*See id.,* Tr. 199, 267). However, the trial judge, who was the trier of fact in this case, relied in large part on that evidence in rejecting the defense position. Specifically, in rendering the verdict of guilt, the trial judge reasoned in relevant part:

> Putting aside the major issue here, which is the defense of insanity, it's obvious that all of the elements [of the charged murder offense and firearms specifications] have been proven. I don't think it's even been denied by the defense. In other words, Nathaniel Richardson is the person who committed the offense; Kenneth Lewis was killed; we know he was killed with a gun; it was in Nathaniel's possession, and which he used; and since he walked up – since the defendant walked up behind [Lewis] and shot him in the back of the head, we can assume it was done purposely. So the elements of the offense are proven.

> Putting aside for the moment the issue of the defense of insanity,

32

which is more simply, or specifically, the defense that the defendant didn't know at the time he did that what he was doing was wrong. And so we have appointed two psychiatrists – really, one is a psychologist and the other one is a psychiatrist – to investigate the issue from their professional viewpoint as to whether the defendant knew what he did was wrong at the time he did it.

And Doctor Chiappone said something that I guess it's true in one sense, but doesn't help me to say it, and he basically said, we can't look into his mind as to why he did this. Well, of course, that's the whole purpose of the defense, I mean, what was in his mind. . . .

So whether Chiappone believes you can't look into his mental state or not, I have to, because that's my duty as a judge to decide his guilt or his innocence, or his not guilty by reason of insanity. And to do that, I have to look at two experts who are diametrically opposed in what they think. And, fortunately, I can look beyond that at the facts and come to a conclusion.

****

Doctor Chiappone says that at the time this event occurred the defendant didn't know it was wrong. Doctor Hawkins says he knew it was wrong. How are you going to break this impasse? One way is to throw up your hands and say, I can't break the impasse.

The other thing that has helped me more than anything is the tape. This is one of those cases with the omnipresence of recording devices. Crimes are more and more commonly being caught on camera, and this is, at least, the second or third murder that I've had that was caught on camera, so I saw the murder just as well, maybe better, than if I was there, because if I'd been there, I couldn't play it back. I played it back about eight times or more.

And what happened is that there was initial talking, didn't amount to much between the two, but at the actual murder, the defendant, apparently, came to the door, walked in a very casual, very casually walked to his left about 10 feet, casually turned around, started very

casually back towards the counter, suddenly sped up, pulled out the gun, shot the victim in the back of the head and quickly exited the premises.

Now, if you look at that, instead of looking at the psychiatrist, look at the actions, you don't have a man who appears to fear that person he's shooting is going to harm him. It appears to me, rather, a hunter stalking an unsuspecting prey. Sneaking action. He sneaked in, shot the man and left.

Now, according to Doctor Chiappone . . ., at the instant the defendant shot the victim, he was afraid that he was going to be injured, but at the same time both doctors agree that the defendant wasn't hallucinating, and it is absolutely impossible for the defendant to believe he was threatened at the instant he shot the victim unless he was hallucinating. The delusion that he had been threatened by words is not an hallucination. And so, although self-defense is not the defense here, still self-defense is part of the mental process.

In other words, why did the defendant kill the victim? Chiappone doesn't know, except to say that he feared him, but when Chiappone says he feared him at the instant he shot him, that does not [com]port with what we've seen, and it doesn't even comport with what the defendant told Chiappone, because he told him that he was afraid the victim would kill him, not that he was immediately threatened.

And in Doctor Hawkins' interview with the defendant, the defendant said he readily admitted that he became angry when confronted by the younger man in the convenien[ce] store. I think that's more probably what happened here.

Again, in this interview with the police, the defendant, in describing what happened said, "Did you go get your juice and then come back up or what?"

"No. No. As soon as I came in the store, that's when he started mouthing off again. And I never even got a chance to get. I was walking towards the juice, to where they keep the juice at, but he just

kept on talking, so I turned around.  I walked past him, turned around, pulled the gun out of my jacket, turned around and shot him."

Apparently, it never occurred to either doctor, mainly, that this gentleman was capable of lying, but that is absolutely not what happened.  And I don't think we have to take him at his word when he said that's what happened.  He sneaked in the store, pretended to be – he was actually nonchalant upon entering the store, nonchalant in turning around.  He showed no indication that he thought he was being talked to by the victim or challenged by the victim, but sneaked up on him. . . .  He moved at great speed.  I think it's very likely that the defendant being a smart man is lying.  And certainly his actions [d]o not comport with the mental state that's being attributed to him by the defense.  His actions show that of a deliberate, willful sneaking and hunting of an unsuspecting prey, undoubtedly, because he was angry.

And so, at the basic minimum, the defense of insanity, or not knowing that what he did was wrong, has not been proven.  In fact, I believe that it's rather obvious that he knew it or he wouldn't have been sneaking.  And he wasn't hallucinating or he would have just come out and shot the man.  And if he hadn't felt guilty, he may or may not have run.  He might have stood there and waited for the police.

So those are my rationales for the evidence.  And it's obvious that, as a result of that, already having found the elements of the crime, that I find the defendant guilty of murder as charged. . . .

(*Id.,* Tr. 322-24, 327-31).

Upon review of the trial transcript, as well as the video tape of the shooting that was reviewed by the trial judge, the undersigned finds that the trial court's determination of guilt was based on a reasonable assessment of the facts presented at trial.  *See* 28 U.S.C. § 2254(d).  Moreover, as the above reasoning reflects, as a rational trier of fact, the trial judge could reasonably infer on the basis of such evidence that petitioner had the requisite *mens rea*, and thus find beyond a reasonable doubt that petitioner purposely caused the victim's death in violation of

Ohio Rev. Code § 2903.02(A).

Accordingly, in sum, petitioner is not entitled to habeas relief based on his claims alleged in Grounds Ten and Eleven challenging the sufficiency of evidence supporting his murder conviction.

## F. Petitioner Is Not Entitled To Relief Based On His Claim In Ground Twelve That His Prison Sentence Constitutes Cruel And Unusual Punishment

In Ground Twelve of the petition, petitioner asserts that his prison sentence violates the Eighth Amendment's Cruel and Unusual Punishment Clause.  (Doc. 1, p. 26).  Petitioner claims that because he "meets the legal requirements to sustain a finding of not guilty by reason of insanity," he should have been committed to a mental hospital and "given proper medical and psychiatric treatment" instead of sentenced to a prison term of "18 years to life." (*Id.*).

On direct appeal, the Ohio Court of Appeals rejected this claim of error because petitioner "failed to prove at trial by a preponderance of the evidence that he was not guilty by reason of insanity," and because the sentence that was imposed was "within the limits provided by law."  (Doc. 25, Ex. 13, p. 4).

For the reasons given above in rejecting petitioner's claims challenging the sufficiency of evidence, *see supra* pp. 26-35, petitioner is unable to prevail on his claim of an Eighth Amendment violation to the extent he argues that he should not have been sentenced to a prison term because he instead should have been found not guilty by reason of insanity.

To the extent petitioner challenges the length of his prison sentence, the Eighth Amendment proscribes the infliction of "cruel and unusual punishments." U.S. Constit. amend. VIII.  This provision "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm,* 463 U.S. 277, 284 (1983).

In *Solem,* the Court stated:

Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the

36

types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals.  But no penalty is *per se* constitutional.  As the Court noted in *Robinson v. California,* 370 U.S. [660,] 667 [(1962)], a single day in prison may be unconstitutional in some circumstances.

*Id.* at 290 (footnote reference omitted, wherein the Court emphasized that it was not acting outside its role by substituting its judgment for that of the sentencing court as to the appropriateness of a particular sentence, but rather was deciding whether the sentence under review was "within constitutional limits" under the Eighth Amendment).

Strict proportionality between a crime and its punishment is not required by the Eighth Amendment.  *United States v. Marks,* 209 F.3d 577, 583 (6th Cir.) (citing *Harmelin v. Michigan,* 501 U.S. 957, 959-60 (1991)), *cert. denied,* 531 U.S. 882  (2000).  Rather, "only an extreme disparity between crime and sentence offends the Eighth Amendment."  *Id.* (citing *United States v. Hopper,* 941 F.2d 419, 422 (6th Cir. 1991)); *see also United States v. Wiley,* 132 Fed.Appx. 635, 643 (6th Cir. May 26, 2005) (not published in Federal Reporter), *cert. denied,* 126 S.Ct. 592, 595 (2005); *cf. United States v. Raad,* 406 F.3d 1322, 1324 (11th Cir.) (when addressing an Eighth Amendment claim, the reviewing court must "make a threshold determination that the sentence imposed is grossly disproportionate to the offense committed"), *cert. denied,* 126 S.Ct. 196 (2005).

A sentence that falls within the maximum penalty set by statute "generally does not constitute 'cruel and unusual punishment'" within the meaning of the Eighth Amendment.  *Bryant v. Yukins,* 39 Fed.Appx. 121, 123 (6th Cir. Apr. 29, 2002) (not published in Federal Reporter) (quoting *Austin v. Jackson,* 213 F.3d 298, 302 (6th Cir. 2000), in turn quoting *United States v. Organek,* 65 F.3d 60, 62 (6th Cir. 1995)), *cert. denied,* 537 U.S. 925 (2002).

In this case, as the Ohio Court of Appeals found, the prison sentence totaling eighteen (18) years to life for the murder offense and attached firearm specification fell within the maximum penalties prescribed by statute.  Petitioner has failed to demonstrate that this sentence is grossly disproportional to the criminal offense committed by him.

Therefore, petitioner is not entitled to relief based on his claim alleged in Ground Twelve that under the circumstances of this case, his sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment.

### G.  Petitioner Is Not Entitled To Relief Based On His Claim Of Judicial Bias Alleged In Ground Thirteen

In Ground Thirteen of the petition, petitioner contends that he was denied due process and equal protection because the trial judge, as trier of fact, was not impartial or neutral.  (Doc. 1, pp. 26-27).

Without citing authority, the Ohio Court of Appeals rejected this claim, which was raised as an assignment of error on direct appeal, finding that the trial court's challenged "isolated comments were in response to questions that the court properly determined to be irrelevant."  (Doc. 25, Ex. 13, p. 4).  The state appellate court further concluded that petitioner had not demonstrated he was prejudiced by the trial court's actions.  (*Id.*).

The Due Process Clause establishes a "constitutional floor" and not a "uniform standard" with respect to a judicial bias claim, such as is alleged here. *See Bracy v. Gramley,* 520 U.S. 899, 904 (1997) (citing *Aetna Life Ins. Co.  v. Lavoie,* 475 U.S. 813, 828 (1986)).  The Due Process Clause requires "a fair trial in a fair tribunal," *Withrow v. Larkin,* 421 U.S. 35, 46 (1975), "before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy,* 520 U.S. at 905 (citing *Aetna Life Ins. Co. ,* 475 U.S. at 821-822, and *Tumey v. Ohio,* 273 U.S. 510, 523 (1927)).

In *In re Murchison,* 349 U.S. 133, 136 (1955), the Supreme Court explained further:

> Fairness of course requires an absence of actual bias in the trial of cases.  But our system of law has always endeavored to prevent even the probability of unfairness.  To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome.  That interest cannot be defined with precision. Circumstances and relationships must be considered.  This Court has said, however, that "Every procedure which would offer a possible

temptation to the average man as a judge * * * not to hold the balance
nice, clear, and true between the State and the accused denies the latter
due process of law." . . .  Such a stringent rule may sometimes bar trial
by judges who have no actual bias and who would do their very best
to weigh the scales of justice equally between contending parties.  But
to perform its high function in the best way "justice must satisfy the
appearance of justice."

(Citations omitted).

In support of his claim of judicial bias, petitioner contends that the trial
judge improperly prevented defense counsel from pursuing a line of questioning
and "interject[ed] his own questions" during the examination of the State's expert
witness, Dr. Hawkins.  (Doc. 1, p. 26).  Petitioner also generally asserts that the
trial judge "made remarks that indicate he was bias[ed], unfair and unreasonable."
(*Id.*, p. 27).

Upon review of the record of the state trial proceeding, the undersigned
could find no evidence of actual or apparent bias on the part of the trial judge.
Contrary to petitioner's contention, it appears that the trial court intervened in the
questioning of Dr. Hawkins only to the extent it reasonably determined defense
counsel was straying into matters irrelevant to petitioner's not-guilty-by-reason-of-
insanity defense, and to the extent it reasonably sought to more fully understand
the bases underlying the witness's opinion testimony in order to assess the relative
merits of the two experts' conflicting conclusions.  Moreover, the undersigned
could find no "remark" made by the trial judge, which suggested bias or partiality
on his part in weighing the evidence presented at trial and determining the
credibility to be accorded the defense and prosecution theories in light of that
evidence.

As discussed above in addressing petitioner's sufficiency of evidence
claims, *see supra* pp. 32-35, the record reflects the trial court's reasoning in
rejecting petitioner's not-guilty-by-reason-of-insanity defense and finding
petitioner guilty of murder beyond a reasonable doubt.  (*See* Doc. 31, Ex. 46, Vol.
II, Tr. 322-31).  This record reveals that before deciding petitioner's guilt or
innocence and the merits of the defense theory, the trial judge viewed the video
tape of the shooting multiple times and objectively weighed the strengths and

weaknesses of the testimony of both the State and defense expert witnesses in light of all the evidence surrounding the shooting that was introduced at trial. Although the trial judge indicated at one point that he believed petitioner lied to the police about the events that occurred immediately before the shooting, he explained that he had reached that conclusion based on the evidence, *i.e.*, the video tape of the shooting which conclusively refuted petitioner's version of events.

Accordingly, in the absence of any evidence supporting petitioner's allegations of judicial bias in this case, petitioner is not entitled to relief based on the claim alleged in Ground Thirteen of the petition.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claim alleged in Ground Nine, which this Court has concluded is waived and thus barred from review on procedural grounds, because "jurists of reason would not find it debatable as to whether this Court is correct in its procedural ruling" under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000).[16]

With respect to the remaining claims alleged in Grounds One through Eight and Ten through Thirteen of the petition, which are addressed on the merits herein,[17] petitioner only has made a substantial showing that the sufficiency of evidence of claims alleged in Grounds Ten and Eleven state "viable claim[s] of the denial of a constitutional right" or are "adequate to deserve encouragement to proceed further;" therefore, a certificate of appealability should issue only for the

---

[16] Because this Court finds that the first prong of the *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in this ground for relief. *See Slack*, 529 U.S. at 484.

[17] Because the adjudication of these claims does not involve a procedural ruling, the two-part test enunciated in *Slack*, 529 U.S. at 484-85, for determining whether or not to issue a certificate of appealability for procedurally-defaulted claims, is inapplicable.

claims alleged in Grounds Ten and Eleven and should not issue for the remaining claims alleged in Grounds One through Eight and Twelve through Thirteen of the petition.  *See Slack,* 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would be taken in "good faith," and therefore GRANT petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 12/20/06                                    **/s/Timothy S. Black**

      cbc                                    Timothy S. Black
                                                 United States Magistrate Judge

K:\BRYANCC\2006 habeas orders\05-257denypet.postconv-err.waiv.sufficevid-insanitydef.8A.bias-judge.prosmisc.iac.wpd

41

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION
_____

Nathaniel J. Richardson, Jr.,
     Petitioner,

                                Case No. 1:05cv257

     v.                            (Dlott, J.; Black, M.J.)

Ernie Moore,
     Respondent.

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action.  Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.   Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s).  Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  *See* Fed. R. Civ. P. 72(b).  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474  U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).